# FAYETTE COUNTY,

## March Term, 1798.

### Leſſee of WILLIAM and JOHN LEE, *v.* PATRICK TIERNAN.

1798.

EJECTMENT for four lots in the town of *Brownſ-ville.*—

Simonſon, for the plaintiff, ſhewed a receipt from *Tho-mas Brown*, the proprietor who laid out the town, dated 1ſt *Oƈtober*, 1786, for 30*l.* paid by *Thomas Neily*, in full for four lots, (the lots in diſpute) and engaging to make a title when requeſted.

On a judgment confeſſed by *Neily*, 28th *December*, 1787, for 790*l.* 13. 6. to *William* and *John Lee*; a writ of *fieri facias* iſſued, *teſted* 28th *September*, 1788, return-able to *December* term, 1788, for real debt 395*l.* 6*s.* 9*d.* with intereſt and coſts. On this execution, theſe lots (with a traƈt of land) were levied and condemned; and, on 28th *July*, 1789, (on a writ of *venditioni exponas*, returnable to *September* term, 1789) the lots were ſold to *William* and *John Lee*, for 12*l.* And, on 22d *Sep-tember*, 1789, the ſheriff acknowledged a deed to *William* and *John Lee* for the lots thus ſold.

*Brackenridge* and *Campbell*, for the defendant, ſhewed a conveyance by *Brown* to *Matthew* and *William Van-lear*, of theſe four lots, dated 29th *June*, 1789, in con-ſideration of 46*l.* and of ſundry covenants therein men-tioned; and a conveyance of the ſame lots from *Matthew* and *William Vanlear*, for 30*l.* to the defendant *Tiernan*, dated 28th *January*, 1792.

It was proved, that, in 1787, it was underſtood gene-rally, that theſe lots were the property of *Neily*, and had been incloſed by him; but they were in the poſſeſſion, or in the care, of one *Campbell*. *Tiernan* then lived in *Maryland*, and did not come into *Pennſylvania*, till in the ſpring of 1790; and there was no reaſon to believe, that he knew any thing of *Brown's* ſale to *Neily*, or of the ſubſequent tranſaƈtions. In 1789, *William Vanlear*, who was a creditor of *Neily's*, ſaid he had an order from *Neily* on *Brown*, to convey theſe lots to him.

*Brackenridge*, for the defendant, refted on the want of notice to *Tiernan* of any claim to thefe lots, other than that which was conveyed to him ; and on the princi- ple, that a purchafer without notice will hold his title.

1798.

1 *Fonbl.* 151-3

*Simonfon*, for the plaintiff. *Brown* had no right to convey to *Vanlear*. He was a truftee for *Neily* ; and, previoufly to the conveyance to *Vanlear*, the lots were levied for *William* and *John Lee*, and afterwards fold to them.

PRESIDENT. From the date of the receipt, *Brown* was a truftee for *Neily*, and every fubfequent purchafer with notice, was, like *Brown*, a truftee. But, whenever the title to the lots came, by regular conveyance into the hands of a *bona fide* purchafer, without notice, for a valuable confideration, he muft hold it, difcharged of the truft.

*Vanlear* purchafed with notice of the truft. He claimed under the truft. His right to this claim under the truft we have not feen. Whatever it was, by this claim, he feems to have got a conveyance from *Brown*. And this title to thefe lots he conveyed to *Tiernan*. But no notice of the truft has been brought home to *Tiernan*, a regular *bona fide* purchafer, for a valuable confideration, and (as no notice has been proved) without notice.

The levy and fale on a judgment not againft *Brown* or *Vanlear*, but againft *Neily*, could not be notice to *Tiernan*, who derived his title through *Vanlear* and *Brown* only. For, in the examination of the chain of title, it was not neceffary, and could not be required, that *Tiernan* fhould examine any records againft *Neily*.

*Tiernan* then, being a *bona fide* purchafer, without notice, and for a valuable confideration, and having a legal title ; this legal title remains in him difcharged of the truft. And there muft, therefore, be a verdict for the defendant.

The jury found accordingly a verdict for the defendant.